[No. F014019. Fifth Dist. May 5, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD E. ARNOLD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts IB, IIB, IIC and IID.

COUNSEL

Margaret A. McKnight for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, W. Scott Thorpe and Edgar A. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VARTABEDIAN, J.—Defendant, Richard E. Arnold, a high school teacher and wrestling coach, was convicted by jury of five felony counts and six misdemeanor counts arising from sexual conduct with two of his female high school students. The trial court sentenced him to prison for a total unstayed term of six years. Defendant appeals, claiming the evidence was insufficient to support four of the counts. He also claims the court abused its discretion

in permitting the People to amend count XII from a charge pursuant to Penal Code[1] section 243.4, subdivision (a), to one under section 243.4, subdivision (c). In the published portion of our opinion, in determining whether substantial evidence supported counts I and VI involving victim Virginia S., we discuss the meaning of "unlawful restraint" as an element of sexual battery pursuant to section 243.4, subdivision (a).

## I. FACTS

### A. *Virginia S. (Counts I Through VII)*

In the spring of 1989, 17-year-old Virginia S. was an 11th grade student. Defendant was her algebra instructor. She was infatuated with him. On February 24, 1989, defendant asked Virginia to meet him behind the gymnasium so that they could go running together. The two ran from the high school to the college football stadium. On the way, defendant commented that Virginia looked "good."

When they got to the stadium, defendant grabbed Virginia's buttocks and pulled her toward him. He smiled and kissed her. Defendant also put both hands under her top and touched her breasts. (Count I, § 243.4, subd. (a).) Virginia pushed defendant away and told him no. Defendant then ran down the stairs while Virginia got a drink of water. Defendant returned and sat next to Virginia. Defendant put his arms around Virginia's waist and put his hand down her shorts to the top of her underwear. (Count II, § 647.6.) Virginia pulled defendant's hand out, and the two ran back to the high school together.

Virginia served as a teacher's aide for Ms. Rold, a physical education instructor, during fifth period of the spring semester. At least twice, Virginia was summoned to defendant's office during fifth period for the purported purpose of making up algebra class work. On one occasion, defendant locked the door and Virginia began working on her algebra. Defendant grabbed Virginia's face and started kissing her. Defendant then put his hand up her leg to her buttocks. Virginia moved defendant's hand. Defendant grabbed Virginia's hand and placed it on his exposed penis. (Counts IV and V, § 243.4, subd. (a) and § 647.6.) Virginia pulled her hand away and left the room.

On a later date during that same semester, defendant called Virginia into the wrestling room. He closed the door and pulled a mat up against the door so it could not be opened. Concerned that defendant might "try something,"

---

[1] All future code references are to the Penal Code unless otherwise noted.

Virginia walked to the other side of the room. Defendant told her to come closer to him. She complied. He asked her why she was frightened and why she had been avoiding him. Defendant smiled and put his hands down her top, touching her breast under her brassiere. (Count VI, § 243.4, subd. (a).) Virginia pushed defendant away and went out the back door of the wrestling room.

In March 1989, Virginia was working at a shoe store. On her 17th birthday, defendant appeared at the store and handed her a present; it appeared to be a red rose. Defendant told her he wanted her to wear it for him. Defendant left. The manager and another employee undid the rose, which turned out to be a pair of red underwear. (Count VII, § 647.6.)[2]

### B. Amanda T. (Counts VIII Through XII)*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. Defense

Defendant testified on his own behalf. He denied committing any of the sexual acts. He admitted giving the red rose to Virginia on her birthday, but explained that he did not know that the rose was in fact underwear.

## II. DISCUSSION

### A. Unlawful Restraint (Counts I and VI)

Section 243.4 (as it read in 1988) provided in pertinent part:

"(a) Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, gratification, or abuse, is guilty of sexual battery. Such an act is punishable by either imprisonment in the county jail for not more than one year or in the state prison for two, three, or four years.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Any person who, for the purpose of sexual arousal, gratification, or abuse, causes another, against that person's will while that person is either

---

[2]We make no reference to count III in our statement of facts because the trial court granted defendant's motion of acquittal as to that count.

*See footnote, *ante,* page 18.

unlawfully restrained by the accused or an accomplice, or is institutionalized for medical treatment and is seriously disabled or medically incapacitated, to masturbate or touch an intimate part of either of those persons or a third person, is guilty of sexual battery. Such an act is punishable by imprisonment in the county jail for not more than one year or in the state prison for two, three, or four years.

"(d) As used in this section, 'intimate part' means the sexual organ, anus, groin, or buttocks of any person, and the breast of a female. Sexual battery does not include the crimes defined in Section 261 or 289. As used in this section, 'touches' means physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense."[3]

██ Defendant asserts the evidence does not support count I (Virginia at the football stadium) and count VI (Virginia in the wrestling room) because the evidence fails to demonstrate that there was an unlawful restraint. Because unlawful restraint is not defined in this code section, defendant asks us to look to the legislative history in formulating a definition of unlawful restraint.[4] Defendant contends unlawful restraint requires a significant limitation on the personal liberty of the victim and renders the crime physically traumatic and psychologically terrifying. Defendant analogizes the restraint for section 243.4, subdivision (a), to the restraint required for the crime of false imprisonment.

██ "Our role as an appellate court is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute. [Citations.] In ascertaining legislative intent, a court must look to the language of the statute and 'accord words their usual, ordinary, and common sense meaning based on the language used and the evident purpose for which the statute was adopted.' [Citations.] In doing so, we must 'presume that the Legislature did not intend absurd results.' [Citation.] Accordingly, if a statute is susceptible to more than one interpretation, we must adopt the reasonable meaning and reject that which would lead to an unjust and absurd result. [Citations.] Even if the language of the statute is unambiguous, it ' "should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*People v. Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

---

[3]Section 243.4 has been amended since the commission of the crimes here. The amendments do not affect any of the issues presented in this case.

[4]Defendant requests that we take judicial notice of portions of the legislative history he has provided to us. The legislative history of section 243.4 is appropriate for our consideration without need for resort to judicial notice. We thus deny the request as unnecessary.

■ Also, if the statute is susceptible of two reasonable interpretations, it must be construed in favor of the defendant. (227 Cal.App.3d at p. 1451.)

Prior to the enactment of section 243.4 in 1982, sex offenses encompassed those acts involving copulation or penetration, including rape, oral copulation, sodomy, and anal or genital penetration. The exception was lewd and lascivious acts against a child under 14 years of age. There was no specific crime of nonconsensual sexual touching of a person over the age of 14, whether committed with or without unlawful restraint of the victim. Such sexually abusive conduct was prosecuted as a misdemeanor assault or battery. When the sexual battery bill was initially presented, it did not contain a requirement that the victim be unlawfully restrained. The report prepared on Assembly Bill No. 2721 (1982-1983 Reg. Sess.) by the Assembly Committee on Criminal Justice contained the following:

"*Scope.* The crime of sexual battery covers a broad category of conduct. For example, a person who, without using any force or threat, touched the buttock of a bikini-clad sunbather, could be sent to prison for 6 years. Should some element of force be included in the definition of this offense?" The illegal restraint requirement was added to the bill. In a letter dated July 23, 1982, the Committee on Human Rights of the State of California expressed reservations regarding the term "restraint," fearing it might be applied to voluntary sexual activities. Although clarification of the term "unlawful restraint" was urged, no clarification was inserted into the bill in its final form. The bill was authored by Assembly Speaker Pro Tempore Leo McCarthy. He made the following comment:

"This bill would provide punishment under criminal law for the case where, for example, a Northern California woman was kidnapped, tied to a tree, and sexually attacked, though not raped. These crimes are more physically traumatic and psychologically terrifying than the current misdemeanor assault and battery conviction would reflect or vindicate. This bill offers a middleground not provided for in our state criminal code." (*News from Assembly Speaker Pro Tempore Leo McCarthy* (June 15, 1982).)

Thus, the definition of unlawful restraint was never clarified by the Legislature. This language has been discussed in two recent appellate opinions.

In *People* v. *Pahl* (1991) 226 Cal.App.3d 1651 [277 Cal.Rptr. 656], Kelly E. voluntarily accepted the defendant's offer of a ride to work. Two days later she agreed to go out with him for a soda. Pahl discussed sexual subjects with Kelly. Kelly told him she wanted to go home. He told her not to be

afraid and drove her to a secluded area. Although Kelly resisted, Pahl removed her clothing. Kelly cried and stated she wanted to go home. Pahl sexually assaulted her. (*Id.* at pp. 1653-1655.) The jury acquitted Pahl of felony and misdemeanor false imprisonment but convicted him of sexual battery.

On appeal, Pahl urged that the inconsistent verdicts supported a finding that there was insufficient evidence to support the unlawful restraint requirement for a sexual battery. Relying on the provision of section 954 that "[a]n acquittal of one or more counts shall not be deemed an acquittal of any other count," the appellate court rejected defendant's argument regarding inconsistent verdicts because the charged offenses were neither identical nor did they fall under the conspiracy exception. (*People* v. *Pahl, supra,* 226 Cal.App.3d 1651, 1656-1660.) Even though each offense required an arguably identical element, the appellate court needed only to determine whether substantial evidence supported the elements of sexual battery, regardless of the verdict on the false imprisonment charges. The appellate court then discussed the meaning of the term "unlawfully restrained" as it is used in the sexual battery statute. As an aside, but without so holding, the court stated, "It may be . . . that the unlawful restraint needed for sexual battery is the same as the violation of personal liberty which constitutes false imprisonment." (*Id.* at p. 1660.)

The appellate court subsequently discussed the meaning of unlawful restraint as follows:

"[T]he term can be viewed as distinguishing the nonsexual physical element of sexual battery from the more wanton 'force, violence, or fear' element of rape. (§ 261, subd. (2).) At least the term 'unlawfully restrained' in section 243.4 means that something more is required than the mere exertion of physical effort necessary to commit the prohibited sexual act. This was the holding in *State* v. *Schenck* (La. 1987) 513 So.2d 1159, in which the Louisiana Supreme Court interpreted that state's sexual battery statute. The nonsexual physical element of the statute required that the offender ' ". . . compels the other person to submit by placing the person in fear . . . ." ' [Citation.] The 14-year-old victim and her aunt were leaving a Mardi Gras parade. The 21-year-old defendant jumped from behind a tree, grabbed the victim by the hips from behind, rubbed himself against her, reached in front, and touched or squeezed her between the legs in the pubic region. 'It was a momentary event quickly concluded when the startled victim dug an elbow into the defendant and cried out, "Pervert," prompting the defendant to agree ("That's me") as he ran back in the direction of the parade.' [Citation.] The court found inadequate evidence of compelled submission, holding that sexual battery requires 'something more than the simple forceful touching required to prove battery . . . .' [Citation.]

"We agree and hold that the unlawful restraint required for violation of section 243.4 is something more than the exertion of physical effort required to commit the prohibited sexual act. Kelly testified to something more. . . . Appellant, for his own sexual gratification, repeatedly touched Kelly intimately against her will. Kelly resisted physically and verbally and expressed a desire to go home, but appellant, being heavier and stronger than Kelly, restrained her despite her pleas. The evidence of unlawful restraint was ample." (*People* v. *Pahl, supra,* 226 Cal.App.3d at p. 1661, fn. omitted.)

In *People* v. *Alford* (1991) 235 Cal.App.3d 799 [286 Cal.Rptr. 762], the defendant was a correctional officer responsible for transporting inmates. On separate occasions, defendant's handcuffed victims were placed in his van. He proceeded to partially undress them and fondle their breasts with his hands and his mouth. (*Id.* at p. 802.) He contended on appeal there was no showing of an unlawful restraint because the restraints placed on the victims were for a lawful purpose. The appellate court found defendant's assertion utterly absurd.

"In other contexts, it is recognized that what is lawfully begun can become unlawful when for example, it exceeds the bounds of reasonableness, when the conduct which would otherwise be lawful is engaged in for an improper purpose or when, as in this case, the original lawful purpose is replaced with or supplemented by an unlawful purpose. . . .

"In this context, an inmate may lawfully be restrained for the purpose of transporting her from one correctional facility to another. However, if the inmate for a period of time is also restrained for an unlawful purpose then the restraint for that time period becomes unlawful. Thus if a person such as defendant takes advantage of the fact of the inmate's lawful restraints and engages in acts for an improper purpose, such as sexual arousal or gratification, the inmate is unlawfully restrained during the illegal acts. Stated another way, in that situation, the officer has exceeded the scope of the permissible restraint and the restraint becomes unlawful." (*People* v. *Alford, supra,* 235 Cal.App.3d at pp. 803-804.)

The statute which contains an element of restraint which bears the closest resemblance to the "unlawful restraint" language in section 243.4 is the false imprisonment statute. "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.)

" ' " " 'In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or express or

implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, *or to go where he does not wish to go*, is false imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both. . . .' " [Citations.]' " (*People* v. *Riddle* (1987) 189 Cal.App.3d 222, 228 [234 Cal.Rptr. 369].)

*People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186], sets forth "unlawful restraint" in its simplest form:

"The primary element of the offense, the unlawful restraint of another's liberty, does not require one or more of those elements necessary to raise the crime to felony status. All that is necessary to make out a charge of false imprisonment, a misdemeanor, is that 'the individual be restrained of his liberty without any sufficient complaint or authority therefor, and it may be accomplished by words or acts [together with the requisite intent to confine] which such individual fears to disregard.' " (Brackets in original.)

■ Thus, a person is unlawfully restrained when his or her liberty is being controlled by words, acts or authority of the perpetrator aimed at depriving the person's liberty, and such restriction is against the person's will; a restraint is not unlawful if it is accomplished by lawful authority and for a lawful purpose, as long as the restraint continues to be for a lawful purpose. The "unlawful restraint required for violation of section 243.4 is something more than the exertion of physical effort required to commit the prohibited sexual act." (*People* v. *Pahl, supra,* 226 Cal.App.3d at p. 1661.)

■ Applying this definition to the present facts, we first turn to count I. Virginia and defendant ran together to the stadium. Virginia had never run with defendant before. Before she left with defendant to go running she thought defendant might kiss her. Knowing this, she still wanted to go along with him, apparently because she was infatuated with him.

At the stadium, defendant was leaning up against a pillar when he said, "come here." Virginia walked over to him. He grabbed her by her buttocks and kissed her, putting his tongue in her mouth. Defendant put both of his hands underneath her clothing and touched her breasts for a couple of seconds. Virginia pushed him away and told him no. Virginia was successful in getting out of defendant's grasp during the kissing and touching. Defendant smiled and Virginia told him to run down the stairs. He did. Virginia's feelings of infatuation changed during this first kiss. Virginia did not tell defendant to stop or anything of that nature until she pushed him away and said no.

The People argue:

"As [Virginia's] math instructor, appellant was an authority figure for her. In addition, she liked him and looked up to him. When, at the . . . stadium, he told her to 'come here' she did so. At this point 'He grabbed my butt and pulled me to him.' [Citation.] There is simply no denying that when he grabbed her 'butt' and pulled her to him, he exercised unlawful restraint against her. Not only did he touch an intimate part of her body, he deprived her of liberty, had her under his physical control, and limited or restricted her freedom. In addition, he exercised unlawful restraint against her when he put his hands inside her two tank tops, under her bra, and touched her breasts. With his hands under her clothing, her physical ability to move away was curbed or limited, as he physically restrained her with his hands under and inside of her clothing."

As stated in *People* v. *Pahl, supra,* 226 Cal.App.3d 1651, to constitute unlawful restraint, something more is required than the act itself of defendant putting his hands down Virginia's top and touching her breasts. However, it is clear that when defendant grabbed Virginia and pulled her to him he was restraining her. The question becomes whether this restraint was unlawful. Virginia did not testify (nor was there any evidence) that the initial activity by defendant of restraining Virginia by grabbing her by the buttocks was against her will and without her consent. Virginia voluntarily accompanied defendant on a nonschool-related function knowing she would be alone with him and thinking something might happen. When something did happen, she did not like it and expressed her dissatisfaction by pushing defendant away and saying no. She was successful in escaping the restraints imposed by defendant. Under these circumstances, there was no showing that at the time defendant grabbed Virginia's buttocks and put his hands down her top that her submission was unwilling and compelled by defendant's words, acts or authority.

We stop short of requiring the prosecution, when proving a section 243.4, subdivision (a), sexual battery, to affirmatively show unwillingness expressed in some form by the victim when the circumstances suggest that the restraint was clearly unwelcome; for example, the victim's unwillingness may be implied if grabbed by a stranger who proceeds to improperly touch the victim as described in section 243.4, subdivision (d). Such a restraint is clearly unwelcome and unlawful.

We are particularly sensitive to the fact that a minor student, infatuated with a teacher, can be susceptible to participating willingly in an activity that suddenly turns into inappropriate sexual conduct. The conduct of a teacher

who takes advantage of such a student, even in absence of "unlawful restraint," is reprehensible. However, the sexual battery statute was not designed to address this type of situation; it is neither age nor relationship specific. A panoply of age- or relationship-specific statutes are present in the California Penal Code and hold persons liable for sexual conduct with a minor without the use of any force or restraint—for example, section 288, involving lewd or lascivious acts with a child under the age of 14; section 261.5, sexual intercourse with a female under the age of 18 and not the wife of the perpetrator; section 286, subdivision (b)(1), sodomy with a person under the age of 18; section 286, subdivision (b)(2), sodomy with a person under the age of 16 and the defendant being over the age of 21. (See also § 288a, subds. (b)(1) and (b)(2), oral copulation; and § 289, subds. (h) and (i), penetration by a foreign object.)

None of the above statutes require any use of force or restraint for a conviction and can be enforced regardless of the consent of the victim. Section 1203.066, subdivision (a)(9) does recognize the higher culpability of persons occupying positions of special trust and denies them probation if they commit an act of substantial sexual conduct. There are also statutes involving assaults or batteries on school property or involving school officials. (See, e.g., §§ 241.2, 241.4 and 243.5.) The sexual battery statute does not contain any of these types of provisions.

Because section 243.4, subdivision (a), does not contain an alternative provision prohibiting the instant sexual conduct committed by a teacher against a minor student, whether the statute's requirement of unlawful restraint has been proven depends on the particular facts.[5] Here, the People failed to present substantial evidence in count I that Virginia was unlawfully restrained.

 The People alternatively urge that when defendant returned to Virginia at the stadium, put his arm around her and placed his hand inside her pants down to her pubic hair, count I was proven. We agree that because defendant's sexual advances had been rejected by Virginia only moments before, Virginia became an unwilling participant when defendant restrained her by putting his arms around her, especially in light of their student-teacher relationship. However, we see two major flaws in this argument. First, these actions were charged as the actions underlying count II and were argued by

[5]The Legislature should consider adopting a statute involving the same sexual conduct presented in section 243.4, but providing an alternative to the nonconsensual restraint requirement; in the place of that requirement it could impose an under-the-age-of-18 provision with regard to the victim and a requirement that the defendant occupy a position of special trust as that term is defined in section 1203.066, subdivision (a)(9).

the prosecutor only to support the count II misdemeanor. If this alleged touching of the groin area was to be the basis of count I, the court needed to give the jury the unanimity instruction, CALJIC No. 17.01, which was not given. Second, this activity falls short of sexual conduct proscribed by section 243.4, subdivision (a). Virginia testified defendant put his hand down her shorts almost to the top of her underwear. There was no evidence that defendant made physical contact with the skin of Virginia's groin. Thus, this argument of the People fails.

■ Next, we review the sufficiency of the evidence to support the unlawful restraint alleged in count VI. Defendant argues that although Virginia appeared reluctant to be in the wrestling room, there was not such a coercive atmosphere that Virginia was forced against her will to enter and remain in the room. Defendant asserts the placing of the mat against the door can reasonably be interpreted as an action intended to exclude others. Defendant finds support for his argument in the fact Virginia pushed defendant away when he touched her breast and went out the back door.

There is more than one reasonable inference which can be drawn from defendant's placement of the mats against the door. The mats could have been placed against the door to exclude others from the room. Also, the blockage of the door restricted Virginia's avenues of escape. The combination of the exclusion of others and the blockage of a main avenue of escape certainly had a tendency to increase Virginia's isolation and feelings of isolation. While in this isolated area, Virginia walked to the other side of the room, away from defendant. Defendant asked her why she was afraid of him. Thus, defendant was aware of Virginia's fear. In addition defendant was Virginia's teacher, an authority figure, and Virginia was a minor. Acting upon this authority, isolation and fear, defendant called Virginia to him and engaged in the prohibited sexual touching. A reasonable jury could have concluded that the coercive atmosphere created by defendant was such that Virginia's liberty was being controlled by defendant's words, acts and authority against her will and that she was unlawfully restrained. We note that although defendant had a certain amount of legal authority over Virginia by virtue of his position as her teacher, he clearly exceeded the bounds of his lawful authority. Substantial evidence supported count VI.

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

*See footnote, *ante,* page 18.

Defendant's convictions on count I and count IV are reversed. In all other respects, the judgment is affirmed. Because count I was designated as the principal offense at the time of sentencing, the matter is remanded to the trial court for resentencing on the affirmed counts.

Martin, Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied May 22, 1992, and respondent's petition for review by the Supreme Court was denied July 29, 1992.