Filed 11/25/20  In re S.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | C090665 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>S.F.,<br><br>    Defendant and Appellant. | (Super. Ct. No. JV139247) |

S.F. (the minor) attacked the victim as she walked through a park.  The juvenile court adjudicated the minor a ward of the court (Welf. & Inst. Code, § 602) based upon true findings the minor committed the crimes of assault with the intent to commit rape (count one) and assault by means of force likely to produce great bodily injury (count two).  The juvenile court committed the minor to the Department of Corrections and Rehabilitation, Division of Juvenile Justice for a maximum of seven years.  On appeal,

1

the minor argues the evidence was insufficient to support the finding he had the intent to rape. He also contends the maximum term of confinement found by the juvenile court must be modified to stay any sentence imposed for the assault by means of force pursuant to Penal Code section 654.[1] We affirm the intent to rape finding but conclude section 654 does apply to stay the sentence for the assault by means of force.

BACKGROUND

The victim walked on a bike trail through a park in the morning while listening to music on her phone held in her hand. The park was lightly populated at this time and she passed a few other people walking and biking on the trail. She also passed the minor, who was sitting on top of a picnic table. The victim continued walking to the end of the trail and then went down towards a reservoir. This area is more remote than the trail as it takes a dip down and the area cannot be seen from the street.

As the victim was coming back up to the trail from the reservoir, the minor walked past her and "very aggressively and very hard" hit her behind. She turned around and screamed "excuse me?" The minor charged at the victim "like a bull," hit her back as she turned, and instantly knocked her to her hands and knees onto the concrete. The minor got on her back, "like a backpack," and the victim tried to fight back. The minor then started gyrating on her, "like a dog humping [her], but it was slow." The victim thought "this boy was going to rape me." The minor then began pulling on her tank top, around her right shoulder, but did not pull it away.

The victim tried to call her husband from her phone while fighting the minor and screamed for help. The minor then tried to take the phone, put his hand over her mouth "[e]xtremely hard," and said in a normal tone "you're going to take this." She was able to bend the minor's fingers and continue screaming. A witness ran up to the minor and

---

[1] Undesignated statutory references are to the Penal Code.

2

victim and asked what was going on. The minor got up, threw a water bottle at the victim, and walked quickly back towards the street. The witness had seen the minor holding the victim down with his knees and lower body and was fighting to keep the victim's hands and arms down. The entire attack lasted about two to three minutes.

The victim believed the minor was going to rape her based on "the smack and then how quickly he tried to push [her] on the ground, and of course, the motions once it happened, and then the hand over [her] mouth." The minor did not try to pull off her pants, touch her genitals, or kiss her during the assault. The victim believed the minor was not trying to rob her because he did not try to take the phone from her hand until she tried to call her husband. The witness also said it did not look like the minor was trying to take any items from the victim.

DISCUSSION

I

*Substantial Evidence Challenge*

The minor argues there is no substantial evidence supporting the finding he had the intent to rape the victim. He asserts even if the evidence is sufficient to support an assault with a sexual component, it cannot establish the minor had the specific intent for the assault to culminate in genital penetration. The People counter the manner of the assault, the minor's gyrating, his language, the secluded location, and the victim's belief the minor was going to rape her, all support the finding the minor intended to rape the victim. We conclude substantial evidence supports the intent to rape finding.

" 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.' " (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994.) " ' "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances

3

might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.] [¶] Before the judgment of the trial court can be set aside for insufficiency of the evidence . . . , it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." ' " (*Id.* at p. 995.)

"Assault with intent to commit forcible rape requires an intent to and an unlawful attempt to have sexual intercourse by force, violence or fear of bodily injury, without consent of the victim." (*People v. Dixon* (1999) 75 Cal.App.4th 935, 942.) " 'The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act.' [Citation.] 'In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken.' " (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597 (*Craig II*).)

Here, the minor's actions, language, and selected location support the juvenile court's finding the minor committed the assault with the intent to rape. The minor aggressively hit the victim's behind, humped her as he pinned her down, and tried to pull off her tank top. While she fought back, the minor forcefully covered her mouth and said, "you're going to take this." The minor also presumably followed the victim from the lightly populated park to a more secluded area near the reservoir, where it took several minutes for someone to help the victim while she screamed. The evidence also did not disclose an intent to rob the victim since the minor tried to take her phone only when she began trying to call her husband.

The minor's two main cases do not support a contrary result. In *People v. Craig* (1957) 49 Cal.2d 313, 318-319 (*Craig I*), the defendant violently murdered the victim after he had told someone on the phone he would "like a 'little loving' " and verbally abused a woman for refusing to dance with him. (*Id.* at p. 319.) There was no evidence

4

the defendant had raped or attempted to rape the victim during the murder.  The court found there was a "complete absence of any evidence in the record to show that he had an intent to commit rape" because the defendant's prior statements showed only a "desire for feminine companionship."  (*Id*. at pp. 318-319.)  The statements said prior to the murder in *Craig I* were vague and not said to the victim.  Conversely, here, the minor's statement was explicit and said during the assault, which included a smack on the victim's behind, humping her, covering her mouth, and pulling at her tank top.

In *People v. Greene* (1973) 34 Cal.App.3d 622, 650-651 (*Greene*), the victim walked down a residential street at night with streetlights on and cars driving by when the defendant walked past, turned her around, and put his arm around her waist.  The defendant indicated he had a gun, the victim asked, " 'What do you want?' "  The defendant responded, " 'I just want to play with you,' " and he then moved his hand up and down her waistline a little as they walked.  (*Id*. at p. 650.)  The victim broke free without a struggle after walking past a couple houses with defendant, screamed, and ran to a friend's house.  At trial, the victim said she was afraid she would probably be raped. (*Id*. at pp. 650-651.)

The appellate court reversed the jury's finding of an intent to rape because the central evidence was the victim's subjective belief.  The court found the victim's "unexpressed subjective evaluation of the situation cannot make an assault with intent to commit rape out of a simple touching which objectively can only be attributed to attempted seduction, or an attempt to secure the satisfaction of some unnatural or abnormal sexual interest, short of actual sexual intercourse."  (*Greene, supra*, 34 Cal.App.3d at p. 651.)  This analysis is inapplicable here, where there was significantly more than a "simple touching" and evidence of the minor's intent was not based solely on the victim's belief she would be raped.  And as with *Craig I*, "play with you" said with an arm around the waist is sufficiently ambiguous to provide no evidence of an intent to rape whereas the minor's statement "you're going to take this" during a

violent assault while on top of the victim is such evidence. The difference with the present case and *Craig I* and *Greene* is not an issue of degrees but the difference between a complete lack of evidence supporting an intent to rape and substantial evidence of an intent to rape.

The minor's actions more resemble those of the defendant in *Craig II, supra,* 25 Cal.App.4th 1593. There, the defendant grabbed the victim by the hair while she was getting out of her car and pushed her back into the driver's seat. (*Id.* at p. 1596.) As the victim struggled, the defendant put his hand under her shirt against "both of her breasts outside her bra." (*Ibid.*) A man living with the victim came outside and physically stopped the defendant's attack. (*Ibid*.) The appellate court affirmed the finding of an intent to rape based on (1) the defendant's statements in prior assaults, including " 'come with me now, or I'll do it here, now' and 'I want you now' "; (2) the defendant touched the victim's breasts; and (3) the defendant had to be physically removed from the victim - "reasonable inference can be drawn that appellant would have continued to pursue a sexual end if [the man] had not physically pulled appellant off [the victim]." (*Id.* at pp. 1599-1600.) The court also contrasted *Greene*, where "the victim simply pulled away from the defendant without a struggle, and he did not pursue her." (*Craig II,* at p. 1600.) These facts resemble the minor's explicit statement, hitting the victim's behind, humping her, pulling of her tank top, and stopping his attack only when someone intervened.

The court in *Craig II* also addressed and rejected the minor's argument that the evidence at most establishes only an intent to commit a sexual assault but cannot establish intent to specifically make "genital penetration." The court stated, "Appellant seems to argue that evidence sufficient under the sexual battery statute is necessarily insufficient under section 220. We fail to see the logic of that argument. Indeed, it seems precluded by section 243.4, subdivision ([h]), which expressly provides that '[t]his section shall not be construed to limit or prevent prosecution under any other law which also proscribes a course of conduct that also is proscribed by this section.' [¶] We are

6

not persuaded that the Legislature, by simply enacting section 243.4, intended to affect the degree or type of proof required to show an assault with intent to commit rape. [¶] We believe from the entire mélange of circumstances shown by the evidence, a reasonable trier of fact could infer that appellant assaulted [the victim] with the specific intent of committing rape. All of his conduct was consistent with that intent. Nothing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse. While other reasonable inferences also might be drawn, it was for the jury, not us, to draw them." (*Craig II*, *supra*, 25 Cal.App.4th at pp. 1603-1604, fn. omitted.) We apply this analysis here and affirm the juvenile court's finding of the minor's intent to rape the victim when he assaulted her.

## II

### *Stay of Assault by Means of Force Sentence*

The minor contends the confinement for assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) must be stayed because it is based on the same act as the assault with the intent to rape (§ 220). The minor states the juvenile court's verbal and written orders do not disclose the precise sentence for each charge but it must include sentences for both convictions. The People agree.

The juvenile court's oral disposition and the minute order state the minor will be committed for a time "not to exceed the statutory limitation." The juvenile detention disposition report stated the Division of Juvenile Justice confinement is for 83.9 months. The commitment order similarly states the maximum period of confinement is seven years, comprised of six years for assault with the intent to rape and one year for assault with force likely to produce great bodily injury.

" ' "[S]ection 654 of the Penal Code proscribes multiple punishment for a single 'act or omission which is made punishable' by different statutes, i.e., a single *criminal* act or omission." ' [Citations.] This prohibition against multiple punishment applies to a

7

juvenile court's aggregation of periods of confinement on multiple counts. [Citations.] [¶] " '[I]t is well settled that . . . section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. . . . If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' " (*In re Calvin S.* (2016) 5 Cal.App.5th 522, 533.) We review a lower court's factual finding whether there was a single criminal act under the substantial evidence standard, which will not be reversed unless unsupported by the evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

We conclude both counts relied on the same criminal act. The two assault convictions required a finding of an assault against another person. (§§ 220, subd. (a)(1), 245, subd. (a)(4).) The petition and evidence at trial disclose the minor's single act of assaulting the victim supported both convictions. We do not examine the intent or objectives of the crimes here because both charges punish the same physical act. (*People v. Louie* (2012) 203 Cal.App.4th 388, 397 ["multiple objectives do not turn a single act into more than one criminal act. A single criminal act, even if committed incident to multiple objectives, may be punished only once"].) Therefore, the juvenile court's implicit decision to not stay the term of one year imposed for the assault by means of force likely to produce great bodily harm is not supported by substantial evidence.

## DISPOSITION

The juvenile court is directed to stay execution of any term of confinement imposed on the sustained allegation of assault by means of force likely to produce great bodily harm. In all other respects, the judgment is affirmed. The trial court is directed to amend the detention disposition report. The court is further directed to forward a

8

certified copy of the amended report to the Department of Corrections and Rehabilitation, Division of Juvenile Justice.

/s/
HOCH, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
MAURO, J.